IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ARKANSAS UNITED
and L. MIREYA REITH                                                                                    PLAINTIFFS

V.                              CASE NO. 5:20-CV-5193

JOHN THURSTON, in his official capacity
as the Secretary of State of Arkansas;
SHARON BROOKS, BILENDA HARRIS-RITTER,
WILLIAM LUTHER, CHARLES ROBERTS,
JAMES SHARP, and J. HARMON SMITH,
in their official capacities as members
of the Arkansas State Board of Election Commissioners;
RENEE OELSCHLAEGER, BILL ACKERMAN,
MAX DEITCHLER, and JENNIFER PRICE,
in their official capacities as members
of the Washington County Election Commission;
RUSSELL ANZALONE, ROBBYN TUMEY,
and HARLAN STEE, in their official capacities as members
of the Benton County Election Commission;
and DAVID DAMRON, LUIS ANDRADE, LEE WEBB,
and MEGHAN HASSLER, in their capacities as members
 of the Sebastian County Election Commission                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are a Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 3) and Brief in Support (Doc. 4) filed by Plaintiffs Arkansas United and L. Mireya Reith. Plaintiffs bring their initial request for a temporary restraining order under Federal Rule of Civil Procedure 65(b), which specifies when and how a court may issue such an order without written or oral notice to the adverse parties or their attorneys. However, in this case, several of the Defendants, who are represented by the Arkansas Attorney General, received notice of the Complaint and Motion, appeared in the case through their counsel, and submitted a Response in Opposition to the Motion (Doc. 12). The other Defendants, who are election commission officials from

1

Washington, Benton, and Sebastian Counties, have not yet appeared in the case and have not responded to the Motion.

The Court finds that the prerequisites necessary for granting *ex parte* relief under Rule 65(b) are not applicable with respect to the Arkansas Defendants who received notice of the lawsuit and responded to the Motion. As to those Defendants, the Court will consider whether to grant the Plaintiffs preliminary injunctive relief under Rule 65(a). As to the remaining Defendants who have either not received notice or have not had a chance to respond to the Motion, the Court will consider Plaintiffs' Motion under Rule 65(a). The legal standard the Court will use in evaluating either motion is the same.

Plaintiffs' brief was eighteen pages long and was accompanied by a fourteen-page declaration by Ms. Reith. The Arkansas Defendants' brief was seventeen pages long and addressed all arguments advanced by the Plaintiffs. The Court finds that the parties' briefing sufficiently advised the Court of the facts and law in dispute and that a hearing on the Motion is not necessary.[1] For the reasons explained below, the Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 3) is **DENIED**.

## I. BACKGROUND

Today is Election Day. The Plaintiffs are Arkansas United, a non-profit organization located in Springdale, Arkansas, and L. Mireya Reith, the founder and executive director of the organization. Arkansas United advocates for immigrant populations in the state through education about the voting process and by assisting those voters who are limited in their English proficiency to read, mark, and cast their

---

[1] Moreover, no party explicitly requested a hearing in their briefing.

ballots at polling places. Arkansas United was founded in 2010 and is funded by hundreds of members who pay dues to support the organization's mission.

Plaintiffs filed their Complaint (Doc. 1) yesterday at 10:43 p.m., less than two hours before Election Day. They filed their Motion seeking injunctive relief at 11:21 p.m., and the Arkansas Defendants responded to the Motion today at 8:58 a.m. According to the Complaint, Plaintiffs' constitutional rights have been violated due to the Arkansas Legislature's enactment of Arkansas Code §§ 7-5-310(b)(4)(B), 7-5-310(b)(5), 7-1-103(a)(19), and 7-1-103(b)(1), which Plaintiffs believe conflict and interfere with § 208 of the federal Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10508, and also violate the Supremacy Clause of the United States Constitution. They seek a declaration from this Court that these provisions of the Arkansas Code are unconstitutional and an injunction that would prohibit the Defendants—who are state officials and county election commissioners—from enforcing these Code provisions.

In filing their Motion for Preliminary Injunction, Plaintiffs ask the Court to preliminarily enjoin the Defendants from enforcing § 7-5-310(b)(4)(B), which states in relevant part, "No person other than [a poll worker] shall assist more than six (6) voters in marking and casting a ballot at an election." Plaintiffs also ask the Court to "require election officials to refrain from creating and/or maintaining lists of the names and addresses of assistors who help voters," (Doc. 3, p. 2)—a requirement that appears in the Code at § 7-5-310(b)(5). Under § 7-1-103(A)(19)(C), a person who assists a voter in marking and casting a ballot in a manner contrary to state law is potentially subject to criminal misdemeanor penalties. Plaintiffs' argument is that the six-voter limitation on assistance under Arkansas law violates the VRA, which provides that "[a]ny voter who

3

requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

Defendants representing the state of Arkansas respond that the request for preliminary injunctive relief should be denied, as the polls are now open, citizens are casting their ballots, and Plaintiffs have made no attempt to justify their eleventh-hour request for relief when the disputed code provisions they cite have been in effect since 2009. The Arkansas Defendants also believe that the Plaintiffs will not succeed on the merits of their claims because they have read the VRA too broadly. Further, they point out that when state election laws like these are challenged, courts should defer to the decisions of the elected representatives of the state, provided the regulations do not unduly burden the right to vote. Below, the Court will consider Plaintiffs' request for preliminary injunctive relief in light of the relevant legal standards articulated by the Eighth Circuit and the Arkansas Defendants' arguments.

## II. LEGAL STANDARD

The Court must consider the following factors, known as the *Dataphase* factors, when determining whether to grant a motion for a preliminary injunction: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm to the movant and the injury that granting an injunction would cause other interested parties; and (4) the public interest. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Dataphase Sys. Inc. v. CL Sys.*, 640 F.2d 109, 113

(8th Cir. 1981)).[2] Preliminary injunctive relief is an extraordinary remedy, and the party seeking such relief bears the burden of proving that the balance of the equities is in its favor. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

"[W]here a preliminary injunction of a duly enacted state statute is sought, we require a more rigorous threshold showing that the movant is likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008). Only if the movant has demonstrated that it is likely to prevail on the merits should the Court consider the remaining factors. *Id* at 732. Furthermore, "[a]s a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018) (per curiam) (citing *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 32 (2008)). "First, a party requesting a preliminary injunction must generally show reasonable diligence. That is as true in election law cases as elsewhere." *Id.* at 1944 (internal citation omitted). Second, the Court must give "due regard for the public interest in orderly elections." *Id.* at 1945 (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam)). "Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 4–5.

---

[2] The same standard applies to a request for a preliminary injunction and a temporary restraining order. *Brooks v. Roy*, 881 F. Supp. 2d 1034, 1049 n.6 (D. Minn. 2012) (citing *S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989)).

### III. DISCUSSION

### A. Likelihood of Success

Plaintiffs contend that Arkansas Code §§ 7-5-310(b)(4)(B), 7-5-310(b)(5), and 7-1-103(a)(19) and (b)(1) are preempted by § 208 of the VRA because the voter assistance restrictions in Arkansas law make it an "impossibility" for a limited English proficient voter to choose an assistor when that assistor has already helped six other voters.[3] Plaintiffs' argument thus presents a question of conflict preemption. Conflict preemption occurs "where (1) compliance with both federal and state regulations is a physical impossibility, or where (2) state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (internal marks and citations omitted).

Both parties point the Court to case law from other district and circuit courts. Plaintiffs highlight *OCA-Greater Houston v. Texas*, in which the Fifth Circuit found that § 208 preempted a Texas state-law requirement that a voter's chosen interpreter must be registered to vote in the voter's county of residence. 867 F.3d 604, 614–15 (5th Cir. 2017). The Fifth Circuit reasoned that Texas's restriction "impermissibly narrow[ed] the right guaranteed by Section 208 of the VRA." *Id.* at 615. Plaintiffs also cite to *Democracy Now North Carolina v. North Carolina State Board of Elections*, in which the district court enjoined a state law that required voters who were patients in hospitals,

---

[3] Courts have regularly assumed that § 208 extends to voters with limited English proficiency. *See OCA-Greater Houston*, 867 F.3d at 615 (applying § 208 to Texas law which prohibited who could act as an interpreter for voters with limited English proficiency); *United States v. Berks Cnty., Pa.*, 250 F. Supp. 2d 525, 538 (E.D. Pa. 2003) (holding that denying Spanish-speaking voters the right to bring their assistor of choice into the voting booth was a violation of § 208). Since neither party addresses this issue, the Court will not expand upon it.

6

clinics, nursing homes, or rest homes to "rely on either a near relative, a legal guardian, or a [multipartisan assistance team] before they may choose any other person to assist them" in voting. 2020 WL 4484063, at *60 (M.D.N.C. Aug. 4, 2020). The district court held that the regulations "impermissibly narrow Section 208's dictate that a voter may be assisted 'by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.'" *Id.* (citing 52 U.S.C. § 10508).

Defendants point the Court to two other district court decisions. In the earliest of those, *Ray v. Texas*, the district court analyzed whether a Texas law that limited who could witness an early voting ballot application was preempted by § 208. 2008 WL 3457021, at *2 (E.D. Tex. Aug. 7, 2008). The Texas law at issue prohibited any individual from acting as a witness more than once for such applications. *Id.* The district court found that there was no conflict between Texas law and § 208 because § 208 "does not preclude all efforts by the State to regulate elections by limiting the available choices to certain individuals." *Id.* at *7.

The other case cited by Defendants is of more recent vintage: *Priorities USA v. Nessel*, a September 2020 decision where a district court declined to enjoin a Michigan statute that limited who could assist voters with the submission of absentee-ballot applications. 2020 WL 5742432, at *12–14 (E.D. Mich. Sept. 17, 2020). The Michigan statute required that assistors be registered Michigan voters, family members of the voter, or household members of the voter. *Id.* at *13. The district court concluded that § 208 did not preempt this statute because the use of the word "a" rather than "the" in § 208 "suggests that some state law limitations on the identity of persons who may assist voters is [sic] permissible" and because the legislative history of § 208 suggests that Congress

7

only intended to preempt state election laws that "unduly burden" the rights recognized in § 208. *Id.* at *14 (citing S. Rep. No. 97-417, at 63 (1982)).

Since none of these cases are binding, the Court turns to principles of statutory interpretation. If § 208 conflicts with the challenged Arkansas statutes, § 208 prevails under the Supremacy Clause. To resolve this question, the Court first looks to the plain language of § 208. Section 208 provides voters who require assistance "by reason of blindness, disability, or inability to read or write" with the option to seek "assistance by a person of the voter's choice." 52 U.S.C. § 10508. The Court is unconvinced that the use of the indefinite article "a" evinces an intent by Congress to allow states to limit who may act as a voter assistor under § 208. As the maxim goes, Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001) (citation omitted).

The same goes for Defendants' argument that an "undue burden" analysis applies here: There is nothing in the statutory language to suggest that a state may burden, unduly or otherwise, the right articulated in § 208. Defendants' citation to *Miller v. Thurston*, 967 F.3d 727, 740 (8th Cir. 2020), to support their position that the Court should apply an undue burden analysis is misleading, as that case challenged Arkansas's election laws under the First Amendment, not the VRA. The Court is not persuaded that it should import the undue-burden standard from First Amendment jurisprudence into a straightforward conflict preemption analysis.

For these reasons, the Court is unconvinced by the opinion in *Nessel* and questions whether the decision in *Ray* survives the Fifth Circuit's decision in *OCA-Greater Houston*. Instead, the Court is persuaded by the rationales set forth in *OCA-Greater*

8

*Houston* and *Democracy North Carolina* that § 208 provides certain voters with a federal right to choose who assists them with voting, as "voting" is defined in 52 U.S.C. § 10310, and that states cannot constrict that right. While Defendants argue that Arkansas's restrictions are reasonable, those restrictions appear to conflict with the plain language of § 208 because they prevent voters from choosing as an assistor an individual who has already assisted six other voters.

Thus, the Court finds that Plaintiffs have demonstrated a substantial likelihood of success on the merits of their VRA claim, satisfying the heightened standard applicable where an injunction of a duly enacted state statute is sought. Based upon the arguments currently before it, the Court finds it likely that Arkansas Code §§ 7-5-310(b)(4)(B), 7-5-310(b)(5), and 7-1-103(a)(19) and (b)(1) impermissibly narrow § 208's dictate that a voter may be assisted "by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

### B. Balance of the Equities

Even though the Court is persuaded of Plaintiffs' likelihood of success on the merits, however, the balance of the equities does not support the entry of an injunction. Plaintiffs ask the Court to order the Defendants to do four specific things: (1) "refrain from enforcing . . . § 7-5-310(b)(4)(B)"; (2) "require election officials to refrain from creating and/or maintaining lists of the names and addresses of assistors who help voters"; (3) require election officials to refrain from referring assistors who help more than six voters for criminal prosecution"; and (4) "permit voters to use assistors of their choice regardless of how many voters those assistors have previously helped." (Doc. 3, p. 2). Granting any of these requests would alter the procedures of an election that is already unfolding.

Therefore, the Court concludes that the balance of the equities does not support an injunction, despite Plaintiffs' likelihood of success on the merits of their challenge.

The timing of this Motion prevents the Court from granting Plaintiffs the relief they seek. Plaintiffs have not offered any explanation why they waited until the night before the election to bring this suit. The six-person limit challenged here was added to the statute in 2009. *See* 2009 Arkansas Laws Act 658 (S.B. 192). Two presidential elections have occurred in the interim, as well as three midterm elections. The Court can glean only two possible explanations for the delay in bringing suit from Ms. Reith's affidavit, neither of which demonstrate that despite Plaintiffs' reasonable diligence, the lawsuit could not be initiated before Election Day: (1) a reduction in the number of bilingual volunteers caused by the pandemic (Doc. 4-1, ¶ 16) and (2) anticipated high voter turnout on Election Day, *id.* at ¶ 15. However, the affidavit also makes clear that voter assistance is a service that Arkansas United has provided successfully during prior elections despite this restriction and makes no compelling argument why this litigation could not have been initiated earlier. *See Benisek*, 138 S. Ct. at 1944 (affirming the denial of a preliminary injunction where appellants waited "until six years, and three general elections, after the 2011 map [of congressional districts] was adopted" to seek injunctive relief).

Additionally, the equities do not favor intervention where the election is already in progress and the requested relief would change the rules of the game mid-play. Election Day voting began several hours ago now, and several hours still remain. Poll workers are disbursed to hundreds of polling locations across the state. They have already been trained in certain procedures, including the state law restricting the number of times one individual may assist voters and the requirement to keep a list of assistors. It would

undoubtedly create confusion and inconsistent enforcement were the Court to require the Arkansas Defendants to communicate a change in the regulations governing the election after the polls open on Election Day itself. Therefore, despite the Court's initial impression that Plaintiffs have a significant likelihood of success on the merits of their claim that the state laws they challenge are preempted by the VRA, the balance of the equities prevents the Court from modifying the procedures by which the election is conducted as the election is ongoing. *See Purcell*, 549 U.S. at 4–5 (vacating an injunction despite "the possibility that qualified voters might be turned away from the polls" because of the threat to the integrity of the election caused by intervention by the courts in the final hour); *see also League of Women Voters of Ark. v. Thurston*, 2020 WL 6269598 (W.D. Ark. Oct. 26, 2020) ("There appears to be much merit to Plaintiffs' arguments . . . . However, mandating [the requested] changes by injunctive relief while . . . voting is ongoing seems likely to further disrupt county election processes . . . ."). The state may ultimately be prevented from prosecuting violations of § 7-5-310(b)(4)(B) if the challenged statutes are indeed preempted by federal law, but the balance of the equities favors maintaining the status quo through the final hours of Election Day.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that the Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 3) is **DENIED**.

**IT IS SO ORDERED** on this 3rd day of November, 2020.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

11