IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ARKANSAS UNITED
and L. MIREYA REITH                                                     PLAINTIFFS

V.                              CASE NO. 5:20-CV-5193

JOHN THURSTON, in his official capacity
as the Secretary of State of Arkansas;
SHARON BROOKS, BILENDA HARRIS-RITTER,
WILLIAM LUTHER, CHARLES ROBERTS,
JAMES SHARP, and J. HARMON SMITH,
in their official capacities as members
of the Arkansas State Board of Election Commissioners;
RENEE OELSCHLAEGER, BILL ACKERMAN,
MAX DEITCHLER, and JENNIFER PRICE,
in their official capacities as members
of the Washington County Election Commission;
RUSSELL ANZALONE, ROBBYN TUMEY,
and HARLAN STEE, in their official capacities as members
of the Benton County Election Commission;
DAVID DAMRON, LUIS ANDRADE, and LEE WEBB,
in their official capacities as members of the Sebastian
County Election Commission; and MEGHAN HASSLER, in
her official capacity as Election Coordinator for the
Sebastian County Election Commission                                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

Before the Court are the Motion for Attorneys' Fees and Costs (Doc. 173) and Brief

in Support (Doc. 174) filed by Plaintiffs Arkansas United and L. Mireya Reith. Defendants

Arkansas Secretary of State John Thurston and the Arkansas State Board of Election

Commissioners ("the State Defendants") and the members of the Washington, Benton,

and Sebastian County Election Commissions ("the County Defendants") have filed

Responses in Opposition (Docs. 193 & 194). On August 19, 2022, the Court entered

judgment in plaintiffs' favor. Plaintiffs now seek attorneys' fees and out-of-pocket

expenses in the amount of $129,882.03 as the prevailing parties in an action to enforce

1

the Voting Rights Act of 1965 ("VRA"). For the reasons stated below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.   BACKGROUND

Plaintiffs brought this lawsuit alleging that Arkansas's statute that forbids individuals from assisting more than six voters in casting their ballot violates § 208 of the VRA. Plaintiffs challenged four sections of the Arkansas Code: the six-voter limit, a related provision requiring counties to track of each person assisting voters, and two criminal provisions used to enforce the six-voter limit. Plaintiffs asked the Court to declare the challenged sections of the Arkansas Code preempted by § 208 of the VRA, enjoin all Defendants from enforcing the challenged laws, and require Defendants to implement a remedial plan to ensure future compliance with § 208.

Plaintiffs filed this case and moved for a temporary restraining order ("TRO") (Doc. 3) on the night before Election Day 2020. The Court denied that motion on Election Day. *See* Doc. 35. Defendants then moved to dismiss this case on procedural and jurisdictional grounds, and the Court denied those motions as well. *See* Doc. 102. After the close of discovery, the parties filed cross-motions for summary judgment. The Court denied Defendants' motions and granted in part and denied in part Plaintiffs' motion, entering judgment in Plaintiffs' favor. *See* Docs. 179, 180. The Court declared that the six-voter limit and the related criminal statutes were preempted by the VRA and permanently enjoined Defendants from enforcing those statutes. The Court did not enjoin the voter-assistor tracking requirement. The State Defendants appealed the Court's judgment; that appeal remains pending.

2

Based on their success in obtaining an injunction against the six-voter limit, Plaintiffs seek to recover their attorney fees and costs. Plaintiffs were represented by the Mexican American Legal Defense and Educational Fund ("MALDEF"). The MALDEF lawyers who worked on this case included Nina Perales, Griselda Vega Samuel, Susana Sandoval Vargas, Francisco Fernandez de Castillo, and paralegal Juan Vazquez.

Plaintiffs ask the Court to award fees based on the following rates and hours worked:

| Biller | Requested Hourly Rate | Hours Billed | Billed Amount |
|---|---|---|---|
| Nina Perales | $500 | 43.14 | $21,570.00 |
| Griselda Vega Samuel | $350 | 111.59 | $39,056.50 |
| Susana Sandoval Vargas | $175 | 106.87 | $18,702.80 |
| Francisco Fernandez de Castillo | $175 | 101.91 | $17,834.25 |
| Juan Vazquez | $120 | 160.73 | $19,287.60 |
| Total | | 524.24 hours | $116,450.60 |

Plaintiffs also seek $13,431.43 in costs, including

- $3,801.93 to hire a process server to serve the various Defendants;
- $22.35 in postage fees;
- $3,267.40 in court reporter fees;
- $5,539.75 in cloud hosting fees for discovery material; and
- $800.00 in court fees.

To justify their requested fees and costs, Plaintiffs have submitted a declaration from Ms. Perales, resumes and time entries for each biller, and a summary of costs. *See* Doc. 174-1.

## II. LEGAL STANDARD

"In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e). "A 'prevailing party' is one who has been awarded some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 598 (2001).

To determine a reasonable fee award, courts calculate the "lodestar" amount, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In making this inquiry, courts may consider the twelve factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[1] However, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

---

[1] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3 (1983) (citing *Johnson*, 488 F.2d at 717–19).

Federal Rule of Civil Procedure 54(d) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Taxable costs are set forth in detail at 28 U.S.C. § 1920 and include fees of the clerk and marshal, fees for printed and electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for copies of any materials necessarily obtained for use in the case, docket fees, and compensation of court-appointed experts and interpreters. In addition to the taxable costs listed in 28 U.S.C. § 1920, the prevailing party may recover as attorney fees "out-of-pocket expenses of the kind normally charged to clients by attorneys." *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294–95 (8th Cir. 1996).

### III. DISCUSSION

### A. Attorneys' Fees

### *1. Prevailing Party and Degree of Success*

Having succeeded in this Court in obtaining a declaratory judgment and injunction against the six-voter limit—the primary object of this lawsuit—Plaintiffs are undoubtedly prevailing parties. *See Planned Parenthood Great Plains v. Williams*, 863 F.3d 1008, 1011 (8th Cir. 2017). Nevertheless, Defendants urge the Court to reduce Plaintiffs' fee award because Plaintiffs are not *unqualified* prevailing parties. Defendants note that the Court did not enjoin the voter-assistor tracking requirement and did not explicitly order Defendants to develop the "remedial plan" sought in the Amended Complaint.

Plaintiffs' entitlement to a full fee award is dependent on their degree of success. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S.

424, 435 (1983); *see also Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001) (holding the plaintiffs were entitled to a full fee award when they succeeded in their state-law voting rights claims but failed in their federal voting rights claims). However, where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. "There is no precise rule or formula for making these determinations," and "the most critical factor is the degree of success obtained." *Id.* "The court necessarily has discretion in making this equitable judgment." *Id.* at 437.

The Court declines to reduce Plaintiffs' award based on less-than-complete success. The tracking requirement was not central to Plaintiffs' claims, and the parties' analysis of it was subsumed into their analysis of the six-voter limit. Any billable hours solely attributable to the tracking requirement were *de minimis*. As for Plaintiffs' request for a remedial plan, the Court's injunction orders Defendants to take remedial steps "to update all trainings, manuals, websites, and any materials given to voters or voter assistors to remove any reference to the six-voter limit." (Doc. 180, p. 2). Plaintiffs requested no further relief.

Plaintiffs "obtained excellent results" and their attorneys "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435.[2] However, a "fully compensatory fee" must

---

[2] The Court also rejects the County Defendants' argument that under the Supreme Court's decision in *Farrar v. Hobby*, 506 U.S. 103 (1992), Plaintiffs should be awarded *no* fees or costs. *Farrar* involved a civil rights suit for damages where the plaintiff received only nominal damages. The Court found the plaintiff was a "prevailing party" but was not entitled to a fee award because the "litigation accomplished little beyond giving petitioners . . . 'moral satisfaction.'" *Id.* at 574 (quoting *Hewitt v. Helms*, 482 U.S. 755, 762 (1987)). Here, Plaintiffs obtained a permanent injunction that accomplished far more than "moral satisfaction."

be reasonable in light of the hours and hourly rates needed to litigate the case. The Court now turns to that inquiry.

### 2. Reasonableness of Hourly Rates and Hours Billed

Plaintiffs seek a fee award of $116,450.60, which is based on 524.24 hours billed at hourly rates ranging from $120 to $500.

"The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience and reputation." *Libertarian Party of S. Dakota v. Krebs*, 2018 WL 4762966, at *2 (D.S.D. Oct. 2, 2018) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) (quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)). The parties agree that the relevant legal market in this case is Arkansas.

Attorney Nina Perales is a nationally recognized voting rights attorney who has litigated cases at all levels of the judiciary for 32 years. While a $500 hourly rate is excessive given the prevailing rates in Arkansas for similar work, the Court finds that a $400 hourly rate is reasonable in these circumstances. *See Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 998 (8th Cir. 2012) (approving a $400 rate for a highly experienced Arkansas civil rights litigator). The Court recognizes that $400 is higher than it normally approves for experienced counsel. Nevertheless, Ms. Perales brings a wealth of experience in a specialized area of the law rarely present in the fee requests before this Court, and she therefore merits a commensurately higher rate.

Attorney Griselda Vega Samuel is also an experienced voting rights litigator with 20 years of legal experience. Attorneys Susana Sandoval Vargas and Francisco Fernandez de Castillo are more junior attorneys, each with about two years of legal experience. Based on the market rates for similarly experienced counsel in this area of the law, the Court approves Ms. Vega Samuel's rate of $350 and Ms. Sandoval Vargas and Mr. Fernandez de Castillo's rates of $175.

Paralegal Juan Vazquez has six years of paralegal experience. The requested rate of $120 is excessive for the Arkansas market, and the Court will reduce Mr. Vazquez's rate to $75.[3]

As for billed hours, the Court has reviewed the time entries submitted by Plaintiffs and finds the hours expended on this case are largely reasonable. Counsel devoted significant time and resources to litigating this case. Defendants vigorously contested this case at every stage, raising—and re-raising—several meritless jurisdictional challenges that nonetheless required extensive briefing. Ms. Perales attests she exercised billing judgment, removing entries for counsels' team communications and all hours billed by Thomas Saenz, MALDEF's President and General Counsel, and Lawrence Walker, Plaintiffs' local counsel.

However, the Court agrees with the State Defendants that some of Ms. Vega Samuel's time entries are insufficiently detailed to be compensable. Therefore, the Court will reduce her billed hours by 25%, from 111.59 to 83.69. The hours billed by Ms. Perales,

---

[3] Contrary to the State Defendants' assertions in their Opposition to the Motion, see Doc. 193, p. 5, paralegal work is compensable, *Missouri v. Jenkins*, 491 U.S. 274, 284–89 (1989).

Ms. Sandoval Vargas, Mr. Fernandez de Castillo, and Mr. Vazquez are sufficiently detailed and reasonable.

The Court declines the State Defendants' request to deduct the hours Plaintiffs' counsel spent working on their unsuccessful motion for a TRO at the outset of this case. If a party prevails overall, "the court should not simply deny fees for particular matters on which the plaintiff did not prevail." *Emery*, 272 F.3d at 1047 (citing *Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 714 (8th Cir. 1997)). "Any award for time spent on matters on which a plaintiff lost, however, must be reasonable" in light of the party's overall success, the necessity of the failed effort, and the attorneys' efficiency in completing the activity. *Id.* The Court finds Plaintiffs' motion for a TRO was necessary given the effect that Plaintiffs expected the challenged statutes would have on their efforts to assist voters on Election Day. Plaintiffs' counsel billed a reasonable number of hours on the TRO motion.

For these reasons, the Court will approve fees based on the following rates and hours:

| Biller | Approved Hourly Rate | Approved Hours Billed | Billed Amount |
|---|---|---|---|
| Nina Perales | $400 | 43.14 | $17,256.00 |
| Griselda Vega Samuel | $350 | 83.69 | $29,291.50 |
| Susana Sandoval Vargas | $175 | 106.87 | $18,702.25 |
| Francisco Fernandez de Castillo | $175 | 101.91 | $17,834.25 |
| Juan Vazquez | $75 | 160.73 | $12,054.75 |
| Total | | 496.34 hours | $95,138.75 |

9

## B. Costs

The State Defendants argue Plaintiffs' $13,431.43 in costs are excessive and that certain of those costs are not taxable under Rule 54(d).

Plaintiff's process-server and postage fees are not taxable under 28 U.S.C. § 1920. *Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985) (process-server fees); *Johnson Tr. of Operating Eng'rs Loc. #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 527 (8th Cir. 2020) (postage fees). Nevertheless, the Court finds these fees are recoverable as reasonable attorney fees. *See Johnson Tr. of Operating Engineers Loc. #49 Health & Welfare Fund v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 527–28 (8th Cir. 2020); *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005). The Court also finds that Plaintiffs' court reporter fees are recoverable as reasonable attorney fees to the extent they include expenses not taxable under § 1920.

The Court declines to tax Plaintiffs' $5,539.75 in cloud hosting fees. Such costs are not listed in 28 U.S.C. § 1920, and "Plaintiffs are not entitled to reimbursement for expenses that are part of normal office overhead in the community," *Emery*, 272 F.3d at 1048. For many attorneys, cloud storage has become as necessary and routine as an internet connection.

Accordingly, the Court finds that Plaintiffs' process-server fees, postage fees, court reporter fees, and court fees are reasonable and awards $7,891.68 in costs.

## C. Apportionment

The County Defendants ask the Court to apportion any award of fees and costs to the State Defendants only. "[T]he general rule [is] that non-prevailing defendants are to be held jointly and severally liable for attorneys' fees and costs." *Snider v. City of Cape*

10

*Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014). However, a district court may, in its discretion, apportion a fee-and-costs award to certain defendants only. *See id.* Such apportionment "may be appropriate . . . between the active instigator of a wrong and a more passive co-defendant who had a more peripheral or ministerial role in the wrong." *Council for Periodical Distribs. Ass'ns v. Evans*, 827 F.2d 1483, 1487 (11th Cir. 1987).

The Court finds it would be inequitable to require the County Defendants to pay Plaintiffs' fees and costs. As the County Defendants correctly point out, it would be arbitrary to hold the three counties that are party to this case liable when all Arkansas counties have enforced the challenged statutes. The State is the entity that enacted the challenged statutes, and as arms of the State, the Arkansas Secretary of State and Arkansas State Board of Election Commissioners have a more direct connection with the challenged statutes than the County Defendants. Accordingly, the Court will order only the State Defendants to pay Plaintiffs' fees and costs.

## IV. CONCLUSION

For these reasons, the Motion for Attorneys' Fees and Costs (Doc. 173) is **GRANTED IN PART AND DENIED IN PART**. The State Defendants are **ORDERED** to pay Plaintiffs their reasonable attorneys' fees of $95,138.75 and costs of $7,891.68, for a total of $103,030.43.

This Order is **STAYED** until the Eighth Circuit resolves the State Defendant's appeal.

**IT IS SO ORDERED** on this _____ day of January, 2023.

 

 

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE